[Crim. No. 482. First Appellate District.—January 30, 1914.]

## THE PEOPLE, Respondent, v. WILLIAM HALES, Appellant.

CRIMINAL LAW—HOMICIDE—CAUSE OF DEATH—SUFFICIENCY OF EVIDENCE.—In this prosecution for homicide the verdict of the jury that the deceased came to her death by violence inflicted by the defendant, not by cocaine administered by herself, is sustained by the evidence, circumstantial and expert, although there is conflict in the latter.

ID.—CORPUS DELICTI—BURDEN AND MANNER OF PROOF—CIRCUMSTANTIAL EVIDENCE.—In a homicide case the burden is on the prosecution to establish the *corpus delicti* to a moral certainty and beyond a reasonable doubt, but it may do so either by direct or circumstantial evidence, and the sufficiency of either or both depends largely upon the character of the individual case.

ID.—CONFLICTING EVIDENCE—RIGHT OF JURY TO REJECT TESTIMONY.—In the presence of a conflict of evidence in a homicide case, however created, the jury is at liberty to reject that which it deems unworthy of credence.

ID.—CIRCUMSTANTIAL EVIDENCE—WEIGHT AS COMPARED WITH OTHER TESTIMONY.—The law does not belittle the value of circumstantial evidence by making a relative distinction between it and direct evidence, nor give a sanctity or an influence to the mere opinion of an expert witness greater or more controlling than that which it accords to circumstantial evidence.

ID.—EXPERT TESTIMONY—CREDIBILITY AND WEIGHT.—The opinion of an expert witness is neither conclusive nor controlling beyond its weight, which must be ascertained by the same rules ordinarily applied to the reception and consideration of all other evidence, whether it be direct or circumstantial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

George E. Price, and John F. Brady, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

LENNON P. J.—The defendant in this case was charged with the crime of murder, convicted of manslaughter, and sentenced to five years' imprisonment in the state prison at San Quentin. He has appealed from the judgment of final conviction and from an order denying a new trial.

The only point presented for a reversal is the alleged insufficiency of the evidence to warrant the verdict and support the judgment.

Briefly stated, the circumstances leading up to and immediately attending the killing of the deceased were these: The defendant was a sailor. The deceased was a woman of the underworld. She had been consorting and carousing with the defendant for several days. The carousal culminated in a quarrel, which eventually developed into a physical encounter, during which the defendant repeatedly beat the deceased with his clenched fists about the head and body, and finally felled her with a blow upon the jaw. While the deceased was prostrate the defendant with his booted foot kicked her viciously and violently in the small of the back and also in the region of the groin. As a result of the beating the deceased received at the hands of the defendant she was badly bruised about the face and breast. The kicking which she received discolored her back, hips, and limbs, and inflicted a bruise the size of a saucer upon her abdomen and above the pelvic bone which extended downward to a point just to the right of the vagina. The deceased was physic-

ally unable to regain her feet for some little time after the assault upon her, but when she did recover from the shock of the brutal beating administered to her she sought shelter in the apartment of her friend, where, after a day and a night of suffering from intense pain in the region of the groin, accompanied by a continuous vomiting and purging of the bowels, she was found dead upon the floor.

Without narrating the details of the testimony given by several witnesses who were called, and who testified for the people upon other phases of this case, it will suffice to say that such evidence shows that the deceased had been addicted to the cocaine habit; that her cravings for the drug were usually satisfied by means of a hypodermic injection; that when she entered the apartment in which she died she had on her person about two grains of powdered cocaine; that she attempted to snuff a portion of the powdered drug, but failed because of the clogged condition of her nostrils; that a locked tin box containing cocaine and a cocaine outfit belonging to the friend of the deceased was found in the apartment.

Dr. David E. Stafford, autopsy surgeon to the coroner of the city and county of San Francisco, was called as a witness for the people. He had performed the autopsy upon the body of the deceased, and upon direct examination testified that when he had completed the autopsy he was unable to determine the cause of death. The autopsy, however, showed "a hyperaemia of the brain and of the lungs and kidney and liver, which were usually found in poisoning cases." Thereupon he caused the removal of the stomach, liver, kidneys and a portion of the brain of the deceased, for the purpose of a toxicological examination, upon the theory that the deceased had died as the result of cocaine poisoning. The result of that examination was negative, that is to say, it did not reveal even a trace of cocaine or any kind of poisoning. Notwithstanding the result of the chemical analysis this witness, upon cross-examination by the defense, testified that in his opinion the deceased had died as the result of cocaine poisoning. Upon redirect examination the witness declared that he had arrived at the conclusion that the death of the deceased was due to poisoning of some kind by a process of elimination; in other words, the

autopsy not having satisfied him that the deceased died as the result of the beating administered to her, he concluded that her death was due to poisoning He declared further that he knew of no method of positively proving the presence of cocaine in the human system except by a toxicological examination; and that his conclusion as to the cause of death in the present case was based solely upon the hyperaemic condition revealed by the autopsy of the brain, lungs, kidney, and liver of the deceased. The witness defined hyperaemia to mean "a congestion—that is an organism or an organ overcrowded with blood." He admitted that such a condition might partially exist in cases where death results from causes other than cocaine poisoning; and gave as an instance the congestion of the lungs resulting from pneumonia. He insisted, however, that a condition of general hyperaemia, such as he had found in the various organs of the deceased, could not result from any cause save the presence of poison of some kind.

We have purposely omitted several details which might be used to point claimed contradictions, inconsistencies, and uncertainties in the testimony of the witness under discussion; and it will be noted in passing that the record does not show that the fact that the deceased was addicted to the cocaine habit was considered by him, hypothetically or at all, in arriving at a conclusion as to the cause of death.

Dr. Charles E. Swartz, a physician, was also called as a witness for the people. He described generally the condition of the body of the deceased as it appeared to him shortly after her death; and then in response to a hypothetical question, which called for his opinion as to whether a kick in the groin such as the deceased received would cause death, testified that if such a kick "were administered, and an individual not expecting it, so that the muscles of the abdomen would be relaxed at the time, the internal injuries received are sufficient to cause death and not leave a mark on the body at all to be noticed."

Aside from minor matters, the foregoing constitutes a sufficient summary of the evidence upon which the people rested and secured a conviction. The defense offered no testimony, but relied for an acquittal solely upon the contention that the evidence adduced on behalf of the people

showed that the death of the deceased was due to cocaine poisoning, and did not result from the beating and kicking administered to her by the defendant.

It is now suggested that the opinion of Dr. Stafford, the surgeon who performed the autopsy, was the only evidence in the case concerning the cause of death which could be rightfully considered by the jury, and that therefore such evidence was conclusive, and in and of itself sufficient to compel a verdict of not guilty.

With this contention we cannot agree. Undoubtedly the burden was upon the prosecution to establish the *corpus delicti* by proof to a moral certainty and beyond a reasonable doubt that the deceased died as the result of injuries willfully and unlawfully inflicted upon her by the defendant. The *corpus delicti*, however, may be established either by direct or circumstantial evidence; and the sufficiency of either or both depends largely upon the character of the individual case in hand. In the present case the prosecution, for proof of the elements of the crime charged, were compelled to rely upon circumstantial and opinion evidence, which, in its entirety, was sufficient, we think, to support the verdict and judgment. The fact that one of the witnesses for the prosecution gave testimony which, if believed, would have met and overcome uncontroverted facts and circumstances that ordinarily and naturally would have justified a finding that the deceased came to her death as the result of violence, does no more than create a conflict in the evidence adduced upon behalf of the people. The situation, then, is no different from that usually created by a conflict between the evidence of the people and the defense; and in the presence of a conflict of evidence, however created, the jury is at liberty to reject that which it deems unworthy of credence. The law does not belittle the value of circumstantial evidence by making a relative distinction between it and direct evidence, and we are not aware of any rule of evidence which gives a sanctity or an influence to the mere opinion of an expert witness greater or more controlling than that which it accords to circumstantial evidence. In short, the opinion of an expert witness is neither conclusive nor controlling beyond its weight, which must be ascertained by the same rules ordinarily applied to the reception and consideration of all

other evidence, whether it be direct or circumstantial. The exigencies of the present case do not require us to determine whether or not, standing alone, the particular circumstances attending the killing of the deceased in the present case, would have sufficed, in the face of an expert opinion to the contrary, to support the finding of the jury implied from the verdict that the deceased came to her death as the result of violence at the hands of the defendant. We do decide, however, that all of the circumstances attending and bearing upon the death of the deceased, coupled with the opinion of Dr. Swartz that a kick in the groin, such as was administered to the deceased by the defendant, could have produced death, created a substantial conflict in the evidence amply sufficient to support the verdict.

The judgment and order appealed from are affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 31, 1914.