476 P.2d 841

STATE of Arizona, Appellee,

v.

Kenneth Wayne HARVILL, Appellant.

No. 1983.

Supreme Court of Arizona,
In Banc.
Nov. 16, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Appellant, Kenneth Wayne Harvill, was tried before a jury and convicted of attempted armed robbery and sentenced to serve not less than four nor more than five years in prison. Appellant now comes to this court alleging that the trial court committed reversible error in denying appellant's motion for a directed verdict and for improperly instructing the jury on the probative value of circumstantial evidence.

The testimony at the trial revealed the following factual situation. The Phoenix Police Department received a tip that the El Maya Restaurant was to be robbed on October 22, 1967. On this date five officers from the police department staked out the restaurant. Two officers concealed themselves in a camper parked in the restaurant parking lot. Two officers concealed themselves across the street from the restaurant. A fifth officer, Officer Dowdy, went into the restaurant at approximately closing time, identified himself, and explained his purpose. Shortly thereafter, Officer Dowdy left the restaurant carrying a money bag and started walking across the restaurant parking lot toward a white Pontiac belonging to the owner of the El Maya. As the officer crossed the parking lot he observed a man approaching him. This man, later identified as Peter Barraza, Jr., followed behind Officer Dowdy until they approached the white Pontiac. At this time Officer Dowdy dropped the money bag, turned and identified himself as a police officer, and ordered the man to halt. When this man appeared to raise his right arm Officer Dowdy fired at him. When Officer Dowdy began firing on Barraza another officer, Officer Ysasi, began firing at Barraza from the camper. Barraza was wounded three times by the officers' gunfire.

At the time of the incident in question appellant was standing near a tree at the rear of the restaurant parking lot. Officer Hemphill, who was concealed in the camper testified that he had observed appellant standing near this tree approximately fifteen to twenty minutes prior to the shooting. The officer testified that he kept appellant under surveillance from the time he first saw him until Officer Dowdy came out of the restaurant. He momentarily looked at Officer Dowdy and then turned his attention back to appellant until the incident was over. On direct examination, Officer Hemphill testified as follows regarding his observation of appellant:

"Q. And what did you do after he got to the tree?

A. He stood there approximately fifteen to twenty minutes. If a car would move in the parking lot the lights of the

car would shine in his direction, then he would move behind the tree. That was the extent of his movement." RT p. 96.

\*    \*    \*    \*    \*    \*

"Q. And what, if anything, did you see Mr. Harvill do from the point you glanced away momentarily until you say everything was over?

A. After the shooting started he ducked down. At the time he ducked down he made a motion like that (indicating). I thought he was throwing something, but he got down like this (indicating) while the shooting was going on." RT p. 97.

\*    \*    \*    \*    \*    \*

"Q. And what did you do immediately after the shooting was over?

A. After the shooting had ceased, Officer Ysasi prior to this time, kicked the rear door of the camper open. When the shooting ceased he got out and ran over towards Mr. Barraza, and I got out directly behind him and walked over to a small white picket fence, and at this time Mr. Harvill was standing by this tree. I told him I was a police officer and he was under arrest. \* \* \*" RT p. 98.

Officer Hemphill also testified that after he took Harvill over to the camper he went back to where Harvill had been standing. While inspecting the area he observed a gun lying approximately six to eight feet southwest of where appellant had been standing.

At the trial, Barraza testfied for the state. His testimony indicated that appellant had first approached him about committing a robbery. Barraza testified that according to the plan he was supposed to actually commit the robbery while appellant would act as a back-up man. He also testified that both he and appellant were armed with .22 caliber pistols. The state also introduced the testimony of Gary Hocker who lived behind the restaurant. Hocker testified that he observed appellant and Barraza talking earlier in the evening and that he observed the entire incident at the restaurant.

At the close of the state's case appellant moved for a directed verdict as to the charge of attempted armed robbery. The motion was denied. The defense presented no witnesses so the case went to the jury upon the basis of the testimony of the state's witnesses. The jury returned a verdict of not guilty on the charge of assault with a deadly weapon, however; appellant was convicted of the charge of attempted armed robbery.

■ We will first consider appellant's argument that the trial court erred in denying his motion for a directed verdict on the charge of attempted armed robbery. It is well settled in this jurisdiction that this court, on review of the lower court's denial of defendant's motion for a directed verdict, must view the facts most strongly in favor of upholding the verdict of the jury. State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966); State v. Turner, 101 Ariz. 85, 416 P.2d 409 (1966). We have also held that the trial court does not have to direct a verdict where there is substantial evidence that the defendant committed the crime charged. State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969); State v. Williams, 104 Ariz. 319, 452 P.2d 112 (1969). A motion for a directed verdict does not question the competency of the evidence only its sufficiency. State v. Acosta, supra; State v. Holliday, 92 Ariz. 168, 375 P.2d 370 (1962).

■■ This court has held that the crime of criminal attempt consists of (1) an intent to commit the crime, and (2) some step or overt act toward the commission of the crime. State v. McCullough, 94 Ariz. 209, 382 P.2d 682 (1963). *See also* State v. Mandel, 78 Ariz. 266, 278 P.2d 413 (1954); State v. Westbrook, 79 Ariz. 116, 285 P.2d 161, 53 A.L.R.2d 619 (1954); State v. Vann, 11 Ariz.App. 180, 463 P.2d 75 (1970). The testimony of Barraza taken as true, was sufficient to enable the jury to find that appellant had the necessary intent to commit the crime charged. Similarly, the testimony of Barraza coupled with that of the other witnesses was suf-

ficient to enable a jury to find that appellant had committed an overt act or taken a step toward the commission of the crime charged. The testimony reveals that appellant was, as planned, standing near the tree as a back-up man for Barraza. It appears that appellant did all that was required of him up until the time the shooting began. The trial court did not err in denying appellant's motion for a directed verdict.

Appellant's second assignment of error is that the trial court erred in instructing the jury that "[T]he law makes no distinction between the weight given to either direct or circumstantial evidence." Appellant cites as authority this court's opinion in State v. Reynolds, 104 Ariz. 149, 449 P.2d 614 (1969) where we said:

"The jury was instructed that the law makes no distinction between circumstantial and direct evidence as to the degree of proof required for a conviction. The instruction is contrary to the law of this state. We are committed to the Rule that to warrant a conviction it is necessary that the circumstantial evidence offered should not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence." 104 Ariz. at p. 150, 449 P.2d at p. 615.

*See also:* State v. Parra, 104 Ariz. 524, 456 P.2d 382 (1969); State v. Miller, 104 Ariz. 335, 452 P.2d 509 (1969); State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967); State v. Alkhowarizmi, 101 Ariz. 514, 421 P.2d 871 (1966); State v. Thompson, 101 Ariz. 38, 415 P.2d 566 (1966); State v. Turner, 101 Ariz. 85, 416 P.2d 409 (1966); State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965); State v. Cox, 93 Ariz. 73, 378 P.2d 750 (1963); State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963); State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960); State v. Andrade, 83 Ariz. 356, 321 P.2d 1021 (1958); State v. Butler, 82 Ariz. 25, 307 P.2d 916 (1957).

The United States Supreme Court in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) held that no distinction exists between circumstantial evidence and direct evidence:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." 348 U.S. at p. 140, 75 S.Ct. at pp. 137–138.

A similar view was expressed by the Honorable Learned Hand in United States v. Becker, 62 F.2d 1007 (2d Cir. 1933). Referring to the alleged error of the trial court in failing to instruct the jury as to the weight of circumstantial evidence, he said:

"The requirement seems to us a refinement which only serves to confuse laymen into *supposing that they should use circumstantial evidence otherwise than testimonial.* All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it." (Emphasis ours). 62 F.2d at p. 1010.

Professor Wigmore discussing the relative probative value of direct and circumstantial evidence concluded:

"The rules of Admissibility have nothing to say concerning the weight of evidence when once admitted. * * * Indeed, it can be said that there are no rules, in our system of Evidence, prescribing for the jury the precise effect

of any general or special class of evidence. So far as logic and psychology assist us, their conclusions show that it is out of the question to make a general assertion ascribing greater weight to one class or to the other." 1 Wigmore, Evidence (3d ed.), § 26, p. 401.

One of the most lucid examinations of the probative value of circumstantial evidence was made by the Honorable Judge Furman in Ex Parte Jefferies, 7 Okl.Cr. 544, 124 P. 924 (1912). Speaking on the issue of the probative value of circumstantial evidence the court said:

"This is a case depending entirely upon what is known as 'circumstantial evidence.' It is therefore proper for us to consider the value of such evidence. Some courts hold that circumstantial evidence is of secondary importance and is inferior to what is called 'direct or positive evidence.' Our investigation and reflections have caused us to reach a different conclusion. All evidence is largely circumstantial, and even when most direct it depends upon circumstances for its credibility, weight, and effect. By way of illustration, suppose that a number of persons witness a homicide, and all testify that they saw A. point a rifle at B., who was standing some 50 yards away; that they saw a flash and heard the report of an explosion; that they saw B. fall to the ground, and upon going to his body found a small hole in his forehead and a similar hole in the back of his head; and that B. immediately died. This would be called a case of direct and positive evidence. The evidence would be direct and positive only to the extent that they saw A. point a rifle at B., that they saw a flash and heard the report of an explosion, that they saw B. fall to the ground, that upon examination they found a hole through his head, and that he died immediately. No witness could testify as a matter of fact that he saw the bullet come out of the gun and pass through the head of B. That the witnesses saw a flash and heard the report of an explosion, based upon past experiences—that

is, circumstances—would prove that A. had fired the gun. Yet it would be possible that A. may have missed B., and another may have fired the fatal shot. To carry this illustration further, suppose that half of the witnesses who saw the homicide testified that B. was not attempting to make an assault on A. at the time of this occurrence, and the other half of the witnesses testified that before A. fired his gun B. had fired at A. This would present an issue of fact to be settled by the jury, and the determination of this question would depend upon a great variety of circumstances, among which might be mentioned the interest or want of interest, bias or want of bias, of each witness in the case, the intelligence of the witnesses, the question as to whether or not they or any of them were suffering from any such physical or mental defect as would impair their sight, hearing, or memory, the viewpoint from which each witness saw the homicide, and the reputation of each witness for truth and veracity. Many other circumstances might be mentioned. All such circumstances must be considered by a jury in weighing the credibility of the witnesses in every case, whether it be of direct or circumstantial evidence. Suppose, for further illustration, we take the case of a contested will, where a number of witnesses testify that they were present and saw the testator execute the will and they signed the same as witnesses at his request, and their evidence is not disputed so far as human testimony is concerned; but, upon an examination of the paper on which the will was written, it is found that the date of the watermark in the paper was several years subsequent to the time of the death of the deceased, which would be the more satisfactory and therefore the best evidence, the direct testimony of these witnesses, or the circumstance of the date of the watermark in the paper? Suppose a number of witnesses testify that they saw a man thrust his hand into a bucket of water and on taking it out a hole remained in the water where the man's

hand had been. It matters not how positive and direct such testimony was, no sane jury would accept it. Why? Because their past experience, based upon circumstances, teaches them that it is contrary to the laws of nature for a hole to remain in water when a solid object is taken therefrom. This knowledge of the laws of nature and this past experience rest upon a great variety of circumstances too numerous to mention. A thousand different illustrations could be made to the same effect.

From these and other reflections we have come to the conclusion that it is a mistake to say that 'circumstantial evidence' is inferior to what is commonly called 'positive and direct testimony.' The truth is that no human testimony is superior to doubt even in cases of the most direct proof." 124 P. at 924–925.

*See*: Rodella v. United States, 286 F.2d 306, 312 (9th Cir. 1960); Lukon v. Pennsylvania R. Co., 131 F.2d 327 (3d Cir. 1942); Commonwealth v. Woong Knee New, 354 Pa. 188, 47 A.2d 450, 454–455 (1946); People v. Hales, 23 Cal.App. 731, 735, 139 P. 667, 668 (1914); State v. Marren, 17 Idaho 766, 107 P. 993, 1000–1001 (1910); Spick v. State, 140 Wis. 104, 121 N.W. 664, 668–669 (1909); 3 Wharton, Criminal Evidence 472 (12 ed. 1955); Wigmore, The Science of Judicial Proof, §§ 320, 321 (3d ed., 1937).

■■ It is the opinion of this court that the probative value of direct and circumstantial evidence are intrinsically similar; therefore, there is no logically sound reason for drawing a distinction as to the weight to be assigned each. We expressly overrule that portion of State v. Reynolds, supra, and any other decision of this court which is contra to our holding in the instant case. We are aware that as a result of this holding it is no longer necessary to instruct the jury regarding the "reasonable hypothesis" theory of circumstantial evidence where the jury is properly instructed as to "reasonable doubt." A proper instruction on "reasonable doubt" as applied to all kinds of evidence gives the jury an appropriate standard upon which to make a determination of guilt or innocence; to instruct further is to invite the confusion of semantics.

It is necessary, therefore, for us to expressly overrule the many decisions of this court which have held that it is fundamental error for the trial court to fail to instruct on the probative force of circumstantial evidence if the prosecution must rely exclusively thereon for a conviction. *See, e. g.*, State v. Bloom, 105 Ariz. 332, 464 P.2d 615 (1970); State v. Valdez Padilla, 105 Ariz. 214, 462 P.2d 82 (1969); State v. Bradley, 102 Ariz. 482, 433 P.2d 273 (1967); State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963); State v. Cox, 93 Ariz. 73, 378 P.2d 750 (1963). Consequently, we find no merit in appellant's contention that the trial judge erred in instructing the jury that the law makes no distinction between circumstantial and direct evidence.

Judgment of the trial court is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.