726 P.2d 596

David L. RAWLINGS and Elizabeth
Rawlings, his wife,
Plaintiffs-Appellees,

v.

Joseph APODACA and Jane Doe Apoda-
ca, his wife; Farmers Insurance Com-
pany of Arizona, an Arizona corpora-
tion, Defendants-Appellants.

William RANEY, Jr., Pamela Kay Raney,
his wife; and Jara Enterprises, an Ari-
zona corporation, Plaintiffs-Appellees,

v.

Joseph APODACA and Jane Doe Apoda-
ca, his wife, Defendants-Appellants.

No. 1 CA–CIV 7010.

Court of Appeals of Arizona,
Division 1,
Department C.

July 25, 1985.

Martori, Meyer, Hendricks & Victor, P.A. by R. Douglas Dalton, Ron Kilgard, Phoenix, for plaintiffs-appellees Rawlings.

Jennings, Strouss & Salmon by John A. Micheaels, Jefferson L. Lankford, Phoenix, for plaintiffs-appellees Raneys & Jara Enterprises.

Dake, Hathaway, Fritz & Swan, P.A. by Milton W. Hathaway, Jr., Teresa Goering, Phoenix, for defendants-appellants Apodaca & Farmers Ins.

## OPINION

BROOKS, Judge.

This case arises out of a fire which occurred on West Elliot Road in Laveen, Arizona on July 25, 1979. The fire engulfed property owned by the defendants Apodaca on the west, a dairy farm to the east owned by the plaintiffs Rawlings, and a vacant lot in between these two properties. At the time of the fire, the Rawlingses were leasing a portion of their dairy farm to William Raney. The Rural Metro Fire Department was called to the scene and eventually succeeded in putting out the fire, but not before considerable damage had been done to the property of the Rawlingses and the Raneys. The Rawlingses and the Raneys filed separate actions against the Apodacas alleging that the damage to their property resulted from the negligence of the Apodacas. The two actions were consolidated for trial. The action filed by the Rawlingses included a claim against Farmers Insurance Company of Arizona (hereinafter "Farmers") which insured a portion of their property for losses and which *also* provided homeowner's liability insurance to the Apodacas. The Rawlingses alleged that Farmers had breached its duty of good faith and fair dealing to them in regard to an investigative report that Farmers had made concerning the fire.

After a bench trial, the trial court found in favor of the Rawlingses and the Raneys and against the Apodacas and in favor of the Rawlingses and against Farmers. The trial court found that the fire had occurred in or at the Apodacas' trash barrels on their property and was caused by the burning of trash in the barrels. The trial court concluded that Mr. Apodaca had been negligent and had violated the state fire code both by burning trash on the day of the fire and by failing to clear the area adjacent to the barrels. The trial court found that Farmers had breached its duty of good faith and fair dealing to the Rawlingses and that its conduct had been intentional, warranting the imposition of punitive damages. The trial court awarded the Raneys damages against the Apodacas in the amount of $23,356.80 plus interest on the judgment. The Rawlingses were awarded $33,369.00 plus interest against the Apodacas. The Rawlingses were awarded $1,000.00 in compensatory damages and $50,000.00 in punitive damages plus interest against Farmers. The trial court, in its discretion, denied the request by the Rawlingses for attorney's fees against Farmers pursuant to A.R.S. § 12–341.01. The Apodacas and Farmers appeal from the judgments entered against them and from the denial of their post-judgment motions. In response, the appellees moved to dismiss the appeal for lack of jurisdiction, alleging that the notice of appeal was not timely filed. We first consider the jurisdictional issue.

## JURISDICTION

A notice of appeal must be filed not later than 30 days after the entry of judgment from which the appeal is taken. Rule 9(a), Arizona Rules of Civil Appellate Procedure (ARCAP). This period may be tolled, however, by the timely filing of certain post-trial motions including a motion

for a new trial. Rule 9(b), ARCAP. In the instant case, it is undisputed that the notice of appeal was timely filed *only* if it was preceded by a proper motion for a new trial. If the motion for a new trial is not in compliance with the applicable rules, it does not operate to extend the time limits within which to appeal. *Edwards v. Young,* 107 Ariz. 283, 486 P.2d 181 (1971).

Rule 59(c), Arizona Rules of Civil Procedure (ARCP), provides:

### Contents of motion; amendment; rulings reviewable

1. The motion for a new trial shall be in writing, shall specify generally the grounds upon which the motion is based, and may be amended at any time before it is ruled upon by the court.

2. Upon the general ground that the court erred in admitting or rejecting evidence, the court shall review all rulings during the trial upon objections to evidence.

3. Upon the general ground that the court erred in charging the jury and in refusing instructions requested, the court shall review the charge and the rulings refusing an instruction requested.

4. Upon the general ground that the verdict, decision, findings of fact, or judgment is not justified by the evidence, the court shall review the sufficiency of the evidence.

Rule IV, Uniform Rules of Practice of the Superior Court provides in relevant part:

(a) *Formal requirements.* All motions made before and after trial shall be in writing, shall indicate the precise nature of the relief requested, shall be accompanied by a memorandum indicating, as a minimum, the precise legal points, statutes and authorities relied on, citing the specific portions of pages thereof, and shall be served on the opposing parties. . . .

(b) *Effect of non-compliance.* If a motion does not conform in all substantial respects with the requirements of this rule . . . the court may dispose of the motion summarily.

Omitting the caption, signatures, and notice of mailing, the motion at issue in the instant case stated:

Defendants Apodaca and Farmers Insurance Company of Arizona, by and through their attorneys undersigned, move this Court, pursuant to Rule 50 of the Arizona Rules of Civil Procedure, to set aside that Judgment signed on November 12, 1982 and entered against them on that date and enter Judgment in favor of the defendants in accordance with the Motion for Directed Verdict, made at the close of the plaintiff's case and at the conclusion of all of the evidence.

Alternatively, defendants move for a new trial pursuant to Rule 59 of the Arizona Rules of Civil Procedure for the following reasons materially affecting the rights of the defendants:

1. Irregularity in the proceedings of the Court and prevailing party and orders and abuse of discretion, whereby the moving party was deprived of a fair trial.

2. Excessive damages.

3. Error in the admission or rejection of evidence or other errors of law occurring at the trial or during the progress of the action.

4. That the verdict, decision, findings of fact, and/or Judgment are not justified by the evidence and are contrary to law.

Counsel for the defendants has ordered various portions of the record of these proceedings and will support the above motions by a Memorandum of Points and Authorities upon receipt of those portions of the trial transcript which have been ordered.

The defendant adopts by reference, the same as those set forth in these motions at length, the various motions for directed verdict, the arguments and citations provided to the Court at the time of the arguments on the motions for directed verdict and since.

Appellees first argue, and we agree, that the first paragraph of the motion purports to be a motion for judgment notwithstanding the verdict pursuant to Rule 50, ARCP. This rule, however, applies only in cases tried to a jury and does not apply to cases tried to the court. *See* Wright & Miller, Federal Practice and Procedure: Civil § 2523 at 540 (1971); *see also Hunter-Wilson Distilling Co. v. Foust Distilling Co.*, 181 F.2d 543 (C.A.3d, 1950). Since this case was tried to the court, Rule 50 has no application.

With respect to the sufficiency of the motion for a new trial, appellees rely almost exclusively on *Butler Products Co. v. Roush*, 145 Ariz. 32, 699 P.2d 906 (App. 1984). In that case, another panel of this court found that a *pro forma* motion for a new trial, which failed to set forth any grounds whatsoever as a basis for the motion, did not meet the requirements of either Rule 59(c), ARCP, or Uniform Rule IV(a). The court pointed out that the motion "had no substance to it whatsoever" and that it "merely requested that a new trial be granted or that additional findings of fact be made."

Unlike the motion in *Butler Products*, the motion for a new trial in the instant case made specific references to the grounds specified in Rule 59(c), ARCP, upon which the motion was based. In *Farmers Ins. Co. of Arizona v. Vagnozzi*, 132 Ariz. 219, 644 P.2d 1305 (1982), our supreme court held that a motion for a new trial must meet two requirements. It must refer to Rule 59, ARCP, as authority, and it must describe the grounds set forth under that rule as the basis for the motion. We find that the motion for a new trial in the instant case meets both requirements.

While it is clear that the motion for a new trial was not in literal compliance with Uniform Rule IV(a) in that it failed to set forth "the precise legal points, statutes and authorities relied on, citing the specific portions or pages thereof," this defect *alone* does not lead us to the conclusion that the motion did not operate to extend the time limits within which to appeal. Uniform

Rule IV(b) provides the sanctions for noncompliance with the rule:

> If a motion does not conform in all substantial respects with the requirements of this rule ... the court may dispose of the motion summarily.

In the instant case, the trial court declined to summarily dispose of the motion, and there is no argument presented on appeal that the trial court abused its discretion in that regard. We find that the motion for a new trial validly extended the time for appeal, and that the notice of appeal was timely filed.

Addressing the merits, the first two issues on appeal concern the judgments entered in favor of the Raneys and Rawlingses and against the Apodacas.

## SUFFICIENCY OF THE EVIDENCE

■ The Apodacas contend that there is insufficient evidence to support the trial court's finding that they caused the fire to occur by burning trash in their trash barrels. Mr. Apodaca testified that neither he nor anyone in his family was burning trash on the day of the fire. No one saw Mr. Apodaca start a fire in the trash barrels that day. The only evidence concerning the burning of trash was circumstantial evidence. The Apodacas argue that the trial court, in this situation, drew an impermissible chain of inferences to reach the conclusion that Mr. Apodaca started the fire. They rely on a rule of evidence, first expressed in Arizona in *New York Life Ins. Co. v. McNeely*, 52 Ariz. 181, 79 P.2d 948 (1938), that to draw an inference from an inference, the prior inference must be established to the exclusion of any other reasonable theory rather than by a probability. The Apodacas argue that before the trial court could conclude that Mr. Apodaca started a trash fire, it first had to conclude that the fire occurred as a result of trash burning in the barrels. They argue that the evidence, at best, merely established a "probability" that the fire was caused by trash burning in the barrels. Because the evidence did not exclude every other possible cause of the fire, they argue that the

trial court was not permitted to use this inference to reach the ultimate fact that Mr. Apodaca was burning trash in the barrels.

We do not agree. First, we note that the rule set forth in *McNeely* has been eroded in subsequent cases. In *Farm-Aero Service, Inc. v. Henning Produce, Inc.*, 23 Ariz.App. 239, 242, 532 P.2d 181, 184 (1975), this court pointed out that the Arizona Supreme Court in *State v. Harvill*, 106 Ariz. 386, 476 P.2d 841 (1970), had rejected the rule relied on in *McNeely* that where a conviction in a criminal case is based upon a chain of inferences, each and every link in the chain must exclude every other reasonable hypothesis. We suggested that the *Harvill* ruling placed the *McNeely* rule in serious doubt. We also note that it is now well-settled that the probative value of direct and circumstantial evidence is essentially similar, and there is no distinction as to the weight assigned each. *State v. Harvill*, 106 Ariz. at 391, 476 P.2d at 846.

Second, in reviewing the evidence presented at trial, we find no reasonable theories for the causation of the fire other than the burning of trash in the Apodaca's barrels, and even the *McNeely* rule has therefore been satisfied. It is well established that an appellate court must view the evidence and reasonable inferences therefrom in the light most favorable to the party in whose favor the judgment was rendered and if any evidence supports the judgment of the trial court, it must be affirmed. *Paul Schoonover, Inc. v. Ram Const., Inc.*, 129 Ariz. 204, 630 P.2d 27 (1981).

Two expert witnesses testified at the trial in this case. John Rowlinson was an experienced firefighter who arrived at the scene of the fire to help extinguish it. Thomas Pugh was a fire investigator and consultant who was hired by Farmers to report his findings and who visited the scene within a few days after the fire occurred. Mr. Pugh was able to observe that the fire had burned in a "V" shaped pattern with the apex of the "V" in the location of the Apodacas' trash barrels. Because of this burn pattern, Mr. Pugh concluded that the fire had to have burned from west to east and had to have started in or around the barrels. Mr. Rowlinson had seen the same "V" shaped pattern forming out from the vicinity of the trash barrels while he was fighting the fire. Because of this burn pattern and because of the speed of the wind that was blowing from west to east on that day, Mr. Rowlinson also concluded that the fire started in or around the barrels and burned from there to the Rawlingses' property. Mr. Rowlinson also recalled that he had observed burned materials in one of the barrels. Mr. Rawlings, himself, had viewed smoke rising from the barrels after he became aware that a fire was spreading towards his property and after he moved to an area where he could view the barrels.

Mr. Rowlinson's observations led him to believe that the only possible cause of the fire was trash burning in the barrels. When questioned by the Rawlingses' attorney, the following dialogue took place:

Q. Based upon your observations of the area on the day of the fire and your background, do you have an opinion that the only possible cause of that fire was trash burning in those barrels?

A. Yes, I do.

Q. What is your opinion?

A. My opinion is that the cause of the fire was because of burning materials within the barrels of trash.

Similarly, Mr. Pugh answered affirmatively to the question whether in his opinion, "the only realistic, only probable cause of this fire is materials being burned inside the trash barrels."

While the Apodacas tried to establish the possibility that the fire could have started by other means not within the Apodacas' control, such as the warm sun shining on glass or cigarettes being thrown on the Apodacas' property near the barrels, such theories were purely speculative with no evidence to support them. There was no evidence that anyone else had come onto the Apodacas' property or even near it.

The Apodacas' property was fenced and Mr. Apodaca himself felt that it was impossible for anyone outside the fence to have thrown cigarettes or other burning materials the distance to the trash barrels.

It was clear that Mr. Apodaca had frequently burned trash in the barrels and there was testimony that he did not always stay in view of the fire while he was burning trash. Although he expressly denied burning trash on the day in question, the trial court found his testimony not worthy of belief. The transcript bears out a multitude of serious discrepancies between his testimony at trial and at a prior deposition.

In our opinion, the evidence in this case is such that the inference that the fire started from the burning of trash in the barrels was established to the exclusion of any other reasonable theory rather than by a mere probability. Although the expert witnesses sometimes spoke in terms of "probabilities," it is clear that there were no other reasonable theories advanced for the cause of the fire other than that it spread from the burning of trash in the barrels. There was evidence that the weather conditions on the day in question made it dangerous to burn trash and that the condition of the Apodaca property and the barrels themselves contributed to the danger. It was therefore permissible for the trial court to use the inference that the fire resulted from trash burning in the barrels to reach the ultimate fact that the fire was caused by Mr. Apodaca's negligent burning of trash.

## PREJUDGMENT INTEREST

The Apodacas object to the award of prejudgment interest on the judgments awarded against them. They correctly observe that prejudgment interest is available as a matter of right on a liquidated tort claim, but argue that the damages in this case were unliquidated. *Arizona Title Ins. & Trust Co. v. O'Malley,* 14 Ariz.App. 486, 484 P.2d 639 (1971). In determining whether a claim is liquidated or unliquidated, the courts have held that damages are liquidated if the evidence of damage furnishes data which, if believed, makes it possible to compute the amount of damages with exactness, without relying on opinion or discretion. *Banner Realty, Inc. v. Turek,* 113 Ariz. 62, 546 P.2d 798 (1976).

After viewing the evidence supporting the damage claims made by the plaintiffs Rawlings, we find ourselves in agreement with the Apodacas that these claims were unliquidated. A major portion of the Rawlingses' judgment consisted of the sum of $14,490.00 representing loss of hay that had been purchased at various times between February, 1979 and July 4, 1979. Mr. Rawlings had exact data to show the price of the hay when it was purchased. However, in figuring the amount of hay that was lost in the fire, he was required to estimate the amount that had been eaten by his cattle prior to the fire. Although the method used by Rawlings to arrive at a figure appears to be reasonable, it definitely required the use of opinion and discretion. Similarly, in calculating the loss for silage that had been burned or damaged in the fire, Rawlings knew the exact price that he had paid for the silage, but was required to utilize opinion and discretion in estimating the amount that had been lost. The majority of the other items such as the hay barn at $13,000.00, the silage wagon at $1,500.00 and the camper shell at $300.00 also required the use of opinion and discretion in arriving at their value. We therefore find that the award of prejudgment interest was inappropriate.

The Raneys' claims, on the other hand, did not require the use of opinion or discretion in arriving at the damage figure. The burned hay was valued at $22,011.83. It represented the major portion of their claim and was purchased within a few days prior to the fire. The Raneys had the receipts for the purchases and no suggestion was made that any of the hay had been used prior to the fire. Since the bulk of the Raney claim was liquidated, we find the award of prejudgment interest proper. We do not find that the claim was unliquidated merely because there was some small difference between the amount of the

claim made in the complaint and that proven at trial. We have previously held that the erroneous omission of a few matters or a minor erroneous calculation of cost does not mandate a finding that the damages are not capable of being made certain by calculation. *Homes and Son Const. Co. v. Bolo Corp.*, 22 Ariz.App. 303, 526 P.2d 1258 (1974). We do find, however, that the time stated in the judgment for the accrual of prejudgment interest is incorrect. The judgment awards prejudgment interest from the date of the loss. As the Apodacas point out, prejudgment interest does not accrue before demand for a sum certain is made on the defendants. *Fairway Builders, Inc. v. Malouf*, 124 Ariz. 242, 264–65, 603 P.2d 513, 535–36 (App.1979). In this case, no evidence was shown that demand was made prior to the time that the complaint was filed. Therefore, the judgment for the Raneys must be modified to allow prejudgment interest from July 24, 1981, the date of the filing of the complaint.

## INSURANCE "BAD FAITH" CLAIM

■ The remaining issues on appeal are raised by Farmers concerning the award of compensatory and punitive damages against it for breach of its duty of good faith and fair dealing to its insureds, the Rawlingses. Farmers advances three separate arguments: (1) that the evidence did not establish the elements for a finding of a breach of the duty of good faith and fair dealing, (2) that expert testimony on the duty of good faith and fair dealing was improperly admitted, and (3) that both the awards of compensatory and punitive damages were improper.

We first consider the issue of whether the elements of a bad faith insurance claim were established. The Rawlingses' claim against their insurer, Farmers, was that the insurer had breached its duty of good faith by failing to furnish the Rawlingses with an investigative report of the fire and by misrepresenting the contents of the report. The trial court made the following findings of fact which we find to be amply supported by the record:

1. At the time of the fire which is the subject of the claim against the Apodacas, Farmers was the property insurer for the Rawlingses and the liability insurer for the Apodacas.

2. Soon after the fire occurred, Farmers caused to be prepared a report on the circumstances surrounding the fire by Thomas Pugh of Moore-Kent, Inc. The report was prepared because the Rawlingses had submitted a claim under their policy for the property damage they suffered as a result of the fire.

3. When Mr. Pugh and his assistant came to the Rawlingses' dairy farm to conduct the investigation, Mr. Rawlings explained to him that he had sizeable uninsured losses and that he would like to have a copy of the report when it was finished. Mr. Rawlings specifically asked Mr. Pugh and Mr. Tiger whether he should have a report prepared himself. Mr. Pugh and Mr. Tiger told him that he would receive the report and that he need not hire an investigator himself. This was confirmed by Farmers' representative, Darrell Schultz.

4. In spite of these promises, Farmers refused to provide Mr. Rawlings with a copy of the report until a complaint was filed with the Arizona Department of Insurance. After this complaint was filed, Farmers agreed to supply the report only on the condition that the Rawlingses pay for half of its cost.

5. Darrell Schultz told Mr. Rawlings' attorney at the time of the dispute about obtaining the report that the report contained nothing that would be of interest to Mr. Rawlings.

6. This statement was false, and Mr. Schultz knew it was false.

7. The uncontradicted expert testimony at trial was that the normal practice in the insurance industry would be for an insurer in the position of Farmers in this case to routinely deliver the report to its insured.

8. The Rawlingses were damaged by having to hire attorneys to obtain the report and by having to spend their own time attempting to obtain the report.

9. The Rawlingses were also damaged in that they did not obtain the report until months after the time that they were entitled to receive it. Had they obtained the report in a timely fashion, they may well have hired their own investigator since the report was somewhat equivocal. By the time they obtained the report, it was too late to conduct an on-site investigation of the fire.

The trial court concluded that Farmers' duty of good faith and fair dealing to Rawlingses as their insurer encompassed (1) the duty to turn over the report, especially where it had been promised to them and Farmers realized they were relying on it in not hiring their own investigator, (2) the duty not to misrepresent the contents of the report, and (3) the duty not to disadvantage one insured in order to protect the insurer's interest as liability insurer of the third party responsible for the first insured's loss. The trial court found that Farmers had breached each of these duties and that its conduct was intentional, warranting the imposition of punitive damages. The trial court awarded compensatory damages of $1,000.00 and punitive damages of $50,000.00.

■ Farmers argues that the trial court has misapplied and wrongfully extended the doctrine of "bad faith" to reach its result. Farmers contends that the only conduct by an insurer which is actionable as the tort of "bad faith" is the bad faith failure or refusal to pay the valid claim of its insureds. It points out that in this case there is no suggestion that Farmers refused to pay any claim made by the Rawlingses or that payment was unreasonably delayed. In fact, the evidence shows that it promptly paid the full policy limits of $10,000.00 and that the Rawlingses' allegations have nothing to do with payment or refusal to pay a claim. In reviewing Arizona law, we find that we must agree that the only conduct actionable as the separate tort of "bad faith" of an insurer in a first party insurance claim is the bad faith failure or refusal to pay the valid claim of its insureds or a delay in payment.

The tort of "bad faith" of an insurance company was first recognized in Arizona in *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981). In *Noble* the Arizona Supreme Court was asked to recognize the existence of tort liability for the willful refusal of an insurance company to pay a valid claim by its insured. The court noted that the leading case on the issue is *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973) in which the California Supreme Court extended the duty of good faith owed by an insurance company to settle the claims of third parties against an insured to include a duty of acting in good faith in paying the valid claims of its insured. The Arizona Supreme Court was persuaded by the rule announced in *Gruenberg* and held that "it is reasonable to conclude that there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." 128 Ariz. at 190, 624 P.2d at 868. Next, the court disagreed with the contention that the elements of the tort are not defined. The court cited *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978) as setting forth the elements of the tort:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one.
>
> \*    \*    \*    \*    \*    \*
>
> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have de-

nied or delayed payment of the claim under the facts and circumstances.

128 Ariz. at 190, 624 P.2d at 868. The Rawlingses apparently argue that *any* action taken by an insurer in regard to its insured, if not done in good faith and if damage to the insured occurs, should be actionable as the tort of "bad faith." The language of *Noble,* which expressly limits the tort to bad faith failure or refusal to pay the valid claim of its insured, does not support this position. While several cases have arisen in Arizona subsequent to *Noble* in which the tort of bad faith of an insurer has been found, we find none in which the actions taken by the insurer have been anything other than a refusal to pay a claim or an unreasonable delay in payment.

The Rawlingses have cited numerous cases in which an insurance company has been found liable for various kinds of conduct. However, in none of these has the tort of "bad faith" been extended to any action other than the failure or refusal to pay the valid claim of its insured.[1] For example, the Rawlingses cite *Continental Life and Acc. Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921, 18 A.L.R.4th 1099 (App.1979) as a case in which the court refused to limit the insurer's duty to the payment of claims under the contract. In that case, the insurer unreasonably delayed in processing an application for insurance coverage after having accepted the payment of a premium. We do not find this to be a case in which the tort of "bad faith" was extended to encompass other actions taken by the insurer. Although the court in that case stated that there was a duty of dealing fairly in processing applications, it did not hold that the breach of this duty amounted to the tort of "bad faith." Rather it recognized the existence of a cause of action for negligent delay in acting upon an application for insurance.

Assuming, without deciding, that the action of the insurer in the case at bench may have been actionable under another theory, such as fraud or misrepresentation, we do not find that it comes within the limited definition of the tort of "bad faith" as defined in *Noble* and subsequent cases. Nor do we find it appropriate to extend the tort of "bad faith" to fit this situation. Since the Rawlingses have pled no other theory of recovery, the judgment of the trial court against Farmers must be reversed. Because of our ruling on this issue, we do not reach the other issues raised by Farmers concerning the admission of evidence and the award of damages.

## CONCLUSION

We reverse the judgment of the trial court against Farmers. We affirm the judgments for the Rawlingses and the Raneys against the Apodacas, but reverse the order of prejudgment interest for the Rawlingses and remand for modification of the order of prejudgment interest for the Raneys in a manner consistent with this opinion.

CONTRERAS, P.J., and EUBANK, J., concur.

---

1. *See Borland v. Safeco Ins. Co.,* 147 Ariz. 195, 709 P.2d 552 (App.1985) (delay in adjusting a covered loss will support a judgment for compensatory damages for bad faith).