NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KURT ANDREW GOETTL, *Appellant*.

No. 1 CA-CR 14-0040
FILED 10-8-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-115567-001
The Honorable Lisa Ann VandenBerg, Judge *Pro Tempore*
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By William Scott Simon
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Donn Kessler delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Patricia K. Norris joined.

**K E S S L E R**, Presiding Judge:

**¶1**        Appellant Kurt Andrew Goettl appeals his convictions and sentences for possession of dangerous drugs for sale (methamphetamine), possession of drug paraphernalia (plastic baggies), and possession or use of narcotic drugs (hydrocodone).  Goettl argues that the superior court abused its discretion by failing to suppress and admitting text message evidence obtained from his cell phone during a warrantless search in violation of the Fourth Amendment.  Goettl argues his convictions should be reversed, and admission of the text messages was not harmless error because such evidence was "the only *direct* evidence supporting [his] *confession*" that he possessed methamphetamine for sale and "absent the text messages . . . the jury would give less weight to [his] confession . . . ." (Emphases added.)  Because we determine any error in admitting the text message evidence was harmless beyond a reasonable doubt, we affirm his convictions and sentences.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        Detective G observed Goettl run a red light on his bicycle. Thereafter, Detective G surveilled Goettl and watched as he met a woman on a bicycle.  As Goettl and the woman walked together with their bicycles Goettl opened a saddle bag on the back of his bicycle and then made a "hand-to-hand transaction" with the woman.  Goettl and the woman then rode away from each other.  Observing the hand-to-hand transaction was significant to Detective G because such a transaction "is when typically a drug item is transferred from one person to the other" for drugs or payment.  Detective G followed Goettl, arrested him, and searched him.[1] During the search, Detective G found a bag of pills later determined to contain hydrocodone, $480 in cash, and a bag containing a crystal substance later determined to be one gram of methamphetamine.  In Goettl's saddle

---

[1] A different officer followed the woman, but no drugs were found when she was searched.

bag, Detective G found more bags containing a substance later determined to total two grams of methamphetamine as well as small clear plastic bags that were empty.

¶3         Detective G also viewed and later photographed text messages on Goettl's phone purportedly reflecting that the purpose of meeting the woman was to sell her drugs.  Goettl was taken to the city jail where he was given *Miranda*[2] warnings and interviewed by Detective G.

¶4         Goettl moved to suppress the text messages arguing they were obtained in violation of his Fourth Amendment rights. The superior court refused to suppress the text messages after determining that cell phones are "containers" which may be searched incident to arrest.[3]

¶5         At trial Detective G testified that during the police interview Goettl stated that the woman wanted to buy drugs from him, but he talked her out of that and gave her some money.  Although Goettl did not tell Detective G that he was selling drugs that day, Goettl stated he did not have a job, his only source of income was selling methamphetamine, and that the $480 was cash he made from selling methamphetamine.  Goettl said that he got the methamphetamine with which he was found earlier that day from his supplier and stated that he typically bought one half ounce to one ounce from his supplier.  Detective G also testified that Goettl admitted that he used methamphetamine earlier that day.  Goettl told Detective G that he believed the pills he had were Vicodin and he had traded methamphetamine for them because sometimes people asked for pills. After Goettl's hearsay objection was overruled, Detective G read into evidence the text message conversation that took place between Goettl and the woman before their encounter.  In addition, the photographs of the messages were admitted into evidence.

¶6         Detective M testified about his training and experience for eighteen years as a patrol officer and narcotics detective and opined that based on the totality of the circumstances the methamphetamine Goettl possessed was for the purpose of sale. Detective M testified about what he takes into account when forming such opinions and stated that he formed his opinion in Goettl's case after reviewing the police reports, evidence, and

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The superior court made this ruling before the United States Supreme Court decided *Riley v. California*, 134 S. Ct. 2473 (2014).  *See infra* ¶ 11 and Footnote 4.

police interview of Goettl. Detective M explained that when forming his opinions about whether drugs are for sale as opposed to personal use, a person's statements to police are the most important factor. According to Detective M, his opinion was largely based on the statements provided by Goettl during the police interview including that Goettl traded a bag of methamphetamine for Vicodin, that he did not have a regular job, and that Goettl told police that the $480 in cash with which he was found was drug sale proceeds. Detective M explained that selling drugs is a "cash business" and people selling drugs typically carry "bulk cash." He also thought that Goettl's statement about trading methamphetamine for Vicodin because sometimes people asked for Vicodin indicated that Goettl was a person who sells drugs and wanted to have product on hand if someone asked for it.

¶7            Apart from Goettl's statements, Detective M's opinion that Goettl possessed the methamphetamine for sale was based on Goettl possessing multiple small plastic bags, typical of those used by drug dealers, which contained methamphetamine, as well as other unused small plastic bags. Detective M explained that in his experience, drug sellers tend to buy a quantity of drugs and then repackage the drugs in smaller quantities for resale using small plastic baggies like the ones Goettl had. According to Detective M if a person intended the drugs for personal use, there would be no reason to have multiple small bags of drugs. In addition, Detective M noted that Goettl was not found with any tools to use drugs, such as a syringe or pipe that a typical drug user carries. Detective M also testified about the current approximate value of methamphetamine and stated that a gram was worth $50 to $60.

¶8            Detective M testified about how in general drug dealers set up drug deals including that drug users usually contact the dealer via cell phone, or some type of electronic communication, or in person, or through another party. Later in his testimony, Detective M was asked about the relevance of the text message conversation between Goettl and the woman. Detective M indicated that when he worked undercover he would order drugs in a similar fashion to the text message conversation by concealing the true nature of his request through the use of certain code words to communicate the desire for drugs and the quantity requested. This was the only testimony Detective M provided with respect to the text message conversation.

¶9            In closing arguments the State twice referred to the text message conversation:

When the case began back on March 20, 2012, the defendant was out engaging in his illegal business of selling methamphetamine and he received a text message from [a woman]. And we talked about those. And [the woman] wanted to get a dime. She wanted to get high. And eventually the defendant told her through the conversation, Okay. I'm at the McDonalds.

. . . .

The text messages are in evidence. You'll be able to review them if you'd like. The text messaging pretty clearly shows that [the woman] wanted to buy drugs off the defendant and the defendant admitted, Yeah, she wanted to buy drugs off of me and that's why I met her. And later he did deny selling drugs to her, but nevertheless, [the woman] wanted to buy drugs off of him and that was the purpose of the meeting.

¶10       Goettl timely appealed from his convictions and sentences. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") section 13-4031 (2010), -4033(A)(1) (2010).

**DISCUSSION**

¶11       Relying upon *Riley v. California*, 134 S. Ct. 2473, 2495 (2014), Goettl argues it was reversible error to admit the text message evidence.[4] The State argues that even if the search was unlawful under *Riley*, the good faith exception applies which would allow the evidence to be admitted and that even if admission was erroneous, it was harmless error given the other evidence.

¶12       For purposes of resolving Goettl's appeal, we assume without deciding that the cell phone search was unconstitutional and the good faith exception did not apply because "[e]rror, be it constitutional or otherwise,

---

[4] *Riley* held that the contents of cell phones cannot be searched pursuant to the "incident to arrest" exception to the warrant requirement. 134 S. Ct. at 2493-94 (leaving open the possibility that "other case-specific exceptions may still justify a warrantless search of a particular phone" such as exigent circumstances).

is harmless [and does not require reversal] if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). Thus, "we consider the error in light of all of the evidence," to determine whether the State has met its burden to prove that "'the guilty verdict actually rendered in *this* trial was surely unattributable to the error.'" *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)); *accord State v. Valverde*, 220 Ariz. 582, 585, ¶ 11, 208 P.3d 233, 236 (2009).

¶13 Goettl maintains that because the State "referred repeatedly" to the text messages during closing arguments, and Detective M based his opinion in part on the text messages, "it is likely, absent the text messages, that the jury would give less weight to [Goettl's] confession" that he possessed the methamphetamine for sale.[5] Goettl directs us to Detective M's testimony that a drug dealer's clients normally make contact by cell phone, and his opinion that Goettl possessed the drugs for sale as opposed to personal use.

¶14 We disagree that the text message evidence contributed to the guilty verdict here. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191. First, Detective M emphasized that although he considered the totality of the evidence, Goettl's statements to police were the most important factor in forming his opinion that Goettl possessed the methamphetamine for sale. Goettl's statements to police established the elements of the offense independent of the other circumstantial evidence or Detective M's opinion about the evidence. *See* A.R.S. §§ 13-3407(A)(2) (Supp. 2015), -3401(6)(c)(xxxviii) (Supp. 2015). Goettl does not dispute that he was in

---

[5] To support this contention, Goettl claims that his "confession was not commensurate with the facts of the case," because: (1) although police observed Goettl's hand-to-hand transaction with a woman, when police stopped the woman she did not possess any drugs; and (2) Detective M testified that a typical amount of methamphetamine sold to a user is about one gram and the total weight of the methamphetamine Goettl possessed was only three grams. We disagree that Goettl's confession was not commensurate with the facts of the case. His confession that the woman wanted to buy drugs he had for sale, but Goettl convinced her not to, is not inconsistent with the fact that the woman did not have drugs when the police searched her. In addition, that Goettl had a total of three grams of methamphetamine including one gram in one bag and the remainder in multiple other bags is not inconsistent with Detective M's opinion that a typical amount of methamphetamine sold to a methamphetamine user is one gram.

possession of methamphetamine when he was arrested and that he told police the woman he met with wanted to buy drugs from him but he talked her out of it. It is also undisputed that Goettl told police the $480 he had was from methamphetamine sales, that his only source of income was selling methamphetamine, and that he had met with his supplier earlier that day.

**¶15** In addition, Detective M stated that his opinion was based on other circumstantial evidence that the methamphetamine Goettl had was for sale including that the quantity of methamphetamine Goettl possessed was enough to be sold, the drugs were packaged in a way typical to drugs for sale, Goettl was in possession of multiple small bags like those typically used to repackage and sell methamphetamine, Goettl had a bulk cash on him and no utensils to use drugs that are often carried by users.

**¶16** Regardless of whether we agree with Goettl that the text message evidence was the only "direct" evidence supporting his *confession*, there was a wealth of circumstantial evidence supporting not only his confession, but also the elements of the offense. *See State v. Harvill*, 106 Ariz. 386, 391, 476 P.2d 841, 846 (1970) (stating the probative value of direct and circumstantial evidence carry the same evidentiary weight).

**¶17** For these same reasons we also disagree that the State's reference in closing argument that the purpose of meeting the woman was to sell methamphetamine contributed to the guilty verdict. Goettl's confession and the wealth of circumstantial evidence that Goettl possessed the methamphetamine for sale convinces us that any error in admitting the text messages was harmless beyond a reasonable doubt. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191.

## CONCLUSION

**¶18** For the reasons stated, any error in admitting the cell phone text message evidence was harmless beyond a reasonable doubt and does not constitute reversible error. We affirm Goettl's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama