726 P.2d 610

**PHIL BRAMSEN DISTRIBUTOR, INC., an Arizona corporation; and Philip D. Bramsen, Sr., and Maureen E. Bramsen, husband and wife, Plaintiffs/Counter - defendants/Appellants/Cross - Appellees,**

v.

**Joseph MASTRONI and Shirley Mastroni, husband and wife; Harold H. Kuhse and Jeanne M. Kuhse, husband and wife, Defendants/Counter-claimants/Cross-Claimants/Appellee/Cross-Appellants.**

**R. Ward CALVERT and Joan R. Calvert, husband and wife, Defendants/Cross-defendants/Appellants,**

v.

**Joseph MASTRONI and Shirley Mastroni, husband and wife; Harold H. Kuhse and Jeanne M. Kuhse, husband and wife, Defendants/Counter-claimants/Cross-claimants/Appellees.**

Nos. 2 CA–CIV 5651, 2 CA–CIV 5652.

Court of Appeals of Arizona, Division 2, Department A.

April 14, 1986.

Review Denied Oct. 7, 1986.

---

Renaud, Cook, Videan, Geiger & Drury, P.A. by J. Gordon Cook, Phoenix, Skousen, McLaws, Skousen, Gulbrandsen & Patience, P.C. by John Larry McLaws, Mesa, for plaintiffs/counterdefendants/appellants/cross-appellees Bramsen.

Meyer, Hendricks, Victor, Osborn and Maledon, P.A. by Ron Kilgard, Phoenix, for defendants/counter-claimants/cross-claimants/appellees/cross-appellants Mastroni and Kuhse.

Snell & Wilmer by William H. Fox and Scott A. Holcomb, Phoenix, for defendants/cross-defendants/appellants Calvert.

## OPINION

HATHAWAY, Chief Judge.

Appellants Phil Bramsen Distributor, Inc., Philip D. Bramsen, Sr. and Maureen Bramsen (Bramsen), appeal from the trial court's reformation of their lease agreement with appellees Joseph Mastroni and Shirley Mastroni (Mastroni) and Harold H. Kuhse and Jeanne M. Kuhse (Kuhse) and the granting of prejudgment interest. Appellants R. Ward Calvert and Joan R. Calvert (Calvert) also appeal the reformation of the lease agreement and the granting of prejudgment interest and, additionally, contest the application of their guarantee of Bramsens' rental payments to the reformed contract. Appellees cross-appeal and contest the denial of their attorney's fees. We affirm the trial court in all aspects except to reverse and remand on attorney's fees.

In 1975, Bramsen, Mastroni and Kuhse formed a joint venture to own land, construct and rent a building on Country Club Drive in Mesa, Arizona. The lessee was to be Phil Bramsen Distributor, Inc. Therefore, Bramsen was to be on both sides of the transaction, as a lessor and a lessee. The parties agreed to a 20–year lease with a base rent of $4,150 per month. They also agreed that an escalation clause be included in the lease. Escalation was to occur every five years during the life of the lease. Mastronis' attorney drafted the lease document, including the escalation clause, which reads:

"The monthly rental on such date shall be multiplied by a fraction, the denominator of which shall consist of the Consumer Price Index for Phoenix, Arizona, as of December 25, 1975 (for which the 1947–48 index equals 100) prepared by the United States Bureau of Labor Statistics and the numerator of which shall consist of the Consumer Price Index for Phoenix, Arizona, as of December 31, 1980, December 31, 1985, and December 31, 1990, respectively, prepared by the Bureau of Labor Statistics or such other department, agency, bureau or instrumentality of the United States Government charged with the preparation of such Consumer Price Index or its equivalent."

Unfortunately, neither the Bureau of Labor Statistics (BLS) nor any other subdivision of the United States Government prepares a consumer price index (CPI) for Phoenix. The lease with the faulty escalation clause was executed on December 17, 1975. In 1978, the parties to the joint venture and lease agreed to purchase additional land and construct an addition to the building, also to be leased to Phil Bramsen Distributor, Inc. An identical escalation clause was included in the second lease. On May 1, 1980, appellants Calvert purchased Bramsen's one-third interest in the joint venture with the consent of Mastroni and Kuhse. As part of the sale, the Calverts guaranteed, among other things, the payment of rents. That guaranty states:

"The undersigned hereby, jointly and severally unconditionally guarantee to (the Mastronis and Kuhses) ('Lessor') the performance and observance by Phil Bramsen Distributor, Inc. ... ('Lessee') of each and every term, covenant, condition, provision and agreement required to be performed and observed by the Lessee under that Lease dated December 17, 1975, ... and under that Lease dated January 10, 1979. ...."

In 1981, Mastroni and Kuhse attempted to invoke the escalation clause. This action followed.

The Bramsens filed suit on August 30, 1982. Bramsens' complaint alternatively sought an injunction against the joint venture to prevent reentry onto the premises, rescission of the leases because of the effect of rent escalation clauses in the leases or a declaration that the escalation clauses had no force or effect. On September 24, 1982, Mastroni and Kuhse filed their first amended answer, counterclaim and cross-claim. The counterclaim sought a declaration that the rent escalation clauses were valid or, alternatively, reformation of the clauses. The cross-claim sought enforcement of the agreement signed by the Calverts guaranteeing payment of the rental due under the leases. On October 3, 1982, Calverts filed their answer to the cross-claim, alleging that the guaranty was not enforceable. On September 16, 1983, the trial court ruled that the escalation clause was not enforceable, but that the issue of reformation was still before the court. On November 4, 1983, the trial court granted partial summary judgment, ruling that the guaranty agreement was enforceable. Also on that date, the court precluded the admission of any evidence on the "fairness" of rent escalation.

After a trial to the court, judgment was entered in favor of Mastroni and Kuhse reforming the rent escalation clause by replacing the "consumer price index prepared by the United States Bureau of Labor Statistics" with the "consumer price index for Phoenix, Arizona." The court went on to hold that the metropolitan Phoenix consumer price index prepared by the Bureau of Business and Economic Research, Arizona State University, would be used in the reformed escalation clause.

Based on the reformation of the escalation clause, the court found that the monthly rent would be increased from $4,150 to $6,848 per month per lease. The court then entered judgment against Bramsen and Calvert, jointly and severally, for approximately $178,000 in back rent and prejudgment interest. The amount of prejudgment interest awarded was $24,538.81. The court declined, however, to award ap-

pellees attorney's fees. This appeal and cross-appeal followed.

Appellants Bramsen raise two issues on appeal: (1) the trial court erred in allowing reformation of the contract under the circumstances of this case, and (2) the evidence and the law do not permit prejudgment interest under the facts of this case. Appellants Calvert raise the same arguments and additionally contend that the trial court erred in granting summary judgment holding that the guaranty of rental payments was enforceable against the Calverts because there existed a factual issue as to whether the guaranty was supported by consideration and because the change in the underlying obligation resulting from the reformation of the rent escalation clause vitiated the guaranty. Appellees raise one issue on appeal: The trial court abused its discretion in failing to award attorney's fees.

## I. REFORMATION

The trial court reformed the contract in question after a trial to the court. Therefore, on appeal, the facts must be viewed in the light most favorable to affirming the judgment. *Gifford v. Makaus*, 112 Ariz. 232, 540 P.2d 704 (1975). This court must affirm the judgment if it can be sustained on any theory. *Lawrence v. Valley National Bank*, 12 Ariz.App. 51, 467 P.2d 763 (1980). We will not substitute our opinion for that of the trial court but will look to see if the facts before the trial court can sustain its judgment.

■ Before reformation can be granted, a court must be presented with clear and convincing evidence that (1) a mutual mistake was made by the parties in drafting the instrument, and (2) that the minds of the parties had met on a definite intention before the instrument was drafted. *Rempt v. Borgeas*, 120 Ariz. 36, 583 P.2d 1356 (App.1978); *City of Scottsdale v. Burke*, 19 Ariz.App. 11, 504 P.2d 552 (1972).

Appellants argue that in the current situation, there was no mutual mistake but rather a unilateral mistake on the part of appellees. Their argument is based largely

upon *Seattle First National Bank v. Earl*, 17 Wash.App. 830, 565 P.2d 1215 (1977). In that case, the parties entered into a 49–year lease agreement with an option for 20 additional years. The lessor suggested that the escalation clause be based upon the cost of living index prepared for the City of Spokane, Washington. As in our case, there was no such cost of living index. Since the lessor had suggested the use of the cost of living index and the other party had accepted the lessor's analysis and opinion, the court held that the mistake was unilateral on the part of the lessor as opposed to mutual. The Washington court refused to reform the escalation clause. The same result does not necessarily hold true under the facts of the case at bench.

■ In the present case, the parties agreed to an escalation clause based on the rate of inflation. It was a mistake of fact that caused the clause to fail. The draftsman, Mastronis' attorney, inserted the term "cost of living index for the City of Phoenix prepared by the Bureau of Labor Statistics." There is no evidence that either appellees or appellants Bramsen had any independent knowledge of such an index or relied on anyone's word but the attorney's. Therefore, by mutual mistake the parties believed they had a workable formula. Appellants argue that because the attorney was Mastronis' agent, the mistake is still unilateral. Even if we were to agree that the drafter was Mastronis' agent, this argument fails. If a mutual mistake of the parties results from the mistake of the draftsman, it is immaterial, so far as reformation is concerned, which party employed him. See *Sutter Youth Organization, Inc. v. Borsen*, 214 Cal.App.2d 676, 29 Cal. Rptr. 628 (1963); *Snider v. Miller*, 352 S.W.2d 161 (Mo.App.1961).

The parties clearly intended to have an escalation clause based on inflation. It was only the error of the scrivner that caused this escalation clause to be unenforceable and the trial court could have found that there was a mutual mistake.

Appellants also argue that there was no agreement by the parties to the lease concerning the escalation clause prior to the drafting of the lease. The parties did, however, agree that there would be an escalation clause based upon inflation. Therefore there was an agreement prior to the drafting of the lease. Appellants Bramsen also argue that the misrepresentation, albeit innocent, as to the existence of a consumer price index for Phoenix prepared by the BLS should preclude reformation of the contract. Any innocent representations did not go to the heart of the agreement, since appellants were prepared to accept an escalation clause based on the CPI for the City of Phoenix. The cases cited by Bramsen are inapposite. See e.g., *Cushman v. New England Fire Insurance Company*, 65 Vt. 569, 27 A. 426 (1893). No equitable reason appears for refusing to reform the lease agreement. On the contrary, equity favors the reformation, otherwise appellant would receive an unconscionable windfall if allowed to enforce his lease at the current rental price. Additionally, the court correctly excluded evidence of fairness. Courts will not consider the adequacy of consideration unless unconscionable. This contract is not unconscionable.

Appellees argue that the trial court, rather than reforming the contract, could have interpreted the contract to encompass the CPI prepared by Arizona State University rather than the mythical one prepared by the BLS. We do not agree with appellees' argument. The language "cost of living index for Phoenix, Arizona ... prepared by the Bureau of Labor Statistics" is not ambiguous. Therefore, rules of construction relative to ambiguous instruments are not applicable. If this escalation clause is to be enforced at all, it must be done through reformation of the contract. We see no equitable, legal or factual reasons for precluding the trial court from reforming this contract.

## II. GUARANTY

Appellants Calvert argue that the trial court should not have granted summary judgment on the issue of the applicability of the guaranty to the reformed contract. They first contend that the guaranty agreement was not supported by consideration and, further, that the alteration of the contract by reformation vitiated their obligation to pay under the guaranty agreement. Consideration is a benefit to the promissor or a loss or detriment to the promisee. *K–Line Builders, Inc. v. First Federal Savings & Loan Association*, 139 Ariz. 209, 677 P.2d 1317 (App.1983). The guaranty here was clearly supported by consideration. It is a promise by the Calverts to guarantee the lease payments to the lessors Mastroni, Kuhse and themselves, in return for which Mastroni and Kuhse permitted the Bramsens to transfer their interests as lessors and joint venturers to the Calverts, which was plainly to the benefit of the Calverts. The consent of Mastroni and Kuhse was required by the joint venture agreement, and Mastroni's testimony makes clear that he did bargain for the guaranty. Therefore *Northern State Construction Company v. Robbins*, 76 Wash.2d 357, 457 P.2d 187 (1969), is inapposite.

The Calverts' argument that reformation of the contract vitiated their obligation is also without merit. Concededly, there is abundant case law to the effect that alteration of the principle obligation destroys the liability of the guarantor. See 38 Am.Jur.2d, Guaranty § 81 (1968). Reformation, however, is not alteration of the principal obligation; it is an enforcement of the intent of the contracting parties. Appellants have cited no case law to the effect that reformation would constitute a change in the underlying obligation that would relieve them from their guaranty contract. Therefore, the trial court was correct in granting summary judgment on the issue of the guaranty.

## III. PREJUDGMENT INTEREST

In Arizona, prejudgment interest is recoverable whenever damages are liquidated. *Fleming v. Pima County*, 141

**200**

Ariz. 149, 685 P.2d 1301 (1984). A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness without reliance upon opinion or discretion. *Homes & Son Construction Company, Inc. v. Bolo Corporation*, 22 Ariz.App. 303, 526 P.2d 1258 (1974). In 1981, appellees made a claim against Bramsen for escalated rent based on the CPI prepared by ASU. Bramsen chose not to pay and this action followed. Bramsen knew the approximate amount appellees sought and therefore the amount was calculable with exactness. Any minor differences between the amount originally sought and the damages proved at trial is irrelevant. *Rawlings v. Apodaca*, 151 Ariz. 180, 726 P.2d 596 (App.1985). We therefore uphold the award of prejudgment interest.

### IV. ATTORNEY'S FEES

Appellees argue that the trial court abused its discretion by failing to award them attorney's fees pursuant to A.R.S. § 12–341.01. In *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (1985), the Arizona Supreme Court held that § 12–341.01 does not carry with it a presumption or requirement that the prevailing party be awarded attorney's fees. In this case, the trial court had before it a relatively close and novel issue of contract reformation, and it was within the trial court's discretion to decline to award attorney's fees. We will not disturb the decision on appeal.

Appellees also argue, however, that their rental agreement and the guaranty agreement provide for attorney's fees regardless of A.R.S. § 12–341.01. Section 16.2 of the rental agreement states:

"16.2. Lessee further covenants and agrees that Lessee will indemnify Lessor against and pay and discharge any and all proper costs and expenses, including reasonable attorneys' fees, that may at any time or times result from or arise out of, or that Lessor may be put to, sustain or incur by reason of any default or failure on the part of Lessee to comply with in any respect, or observe any requirement or provision of this ·Lease, or that Lessor may sustain, be put to or incur in enforcing or properly seeking to enforce any of the terms, obligations or covenants hereof, and further, that in case of any suit or proceeding brought by Lessor to enforce or secure the performance or observance or to prevent breach or violation of any of the covenants or provisions of this Lease...."

The guaranty agreement states: "Guarantors agree to pay a reasonable attorneys' fee and all other costs and expenses which may be incurred by Lessor in the enforcement of this Guaranty."

Appellants argue that the above provisions are inapplicable pursuant to the reasoning in *Miscione v. Bishop*, 130 Ariz. 371, 636 P.2d 149 (App.1981). In *Miscione*, the plaintiff sought reformation of a note. The defendant, however, tendered all sums requested and the court held reformation would be "futile" and found for the defendant. This court held the attorney's fees provision of the note was not enforceable because plaintiff had not prevailed in an action for collection on the note. In the instant case, appellee prevailed. Once the contract was reformed, it related back to the original date of contract. Therefore all payments since 1981 are in default and the attorney's fee provision applies. We remand to the trial court to determine reasonable attorney's fees pursuant to the contract provision.

### V. COSTS

Appellees' motion for costs and attorneys fees is granted on appeal.

HOWARD, P.J., and FERNANDEZ, J., concur.