89 F.3d 845
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee,
v.
Wallace S. OLSEN, Jr. and Katherine E. Olsen, Defendants-Appellants.
 No. 94-16975.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided June 24, 1996.
 
 1
 Before: HALL and BRUNETTI Circuit Judges, and WEINER,[1] Senior District Judge.
 
 MEMORANDUM[2]
 
 2
 The Resolution Trust Corporation (RTC),[3] as receiver for Western Savings and Loan Association, F.A. brought this against Wallace and Katherine Olsen (collectively "Olsens"), alleging liability under a Guarantee the Olsens signed in connection with a condominium project in Phoenix, Arizona. The Olsens later filed a counterclaim against the RTC for breach of contract. By Order of October 9, 1992, the district court dismissed the Olsens' counterclaim[4]; by Order of June 29, 1994, the court granted summary judgment in favor of the RTC on the main claim. For the reasons which follow, we affirm the orders of the district court dismissing the counterclaim and entering judgment in favor of the FDIC.[5]
 
 
 3
 In granting summary judgment to the RTC, the district court rejected the Olsens' arguments that they were discharged from liability under the Guarantee because the RTC's failure to provide financing to Olsens' purchasers was a material breach of the Loan Commitment, and a failure of consideration for the Guarantee. The district court found, applying federal law, that the express language of the Guarantee precluded the defendants from asserting a defense that the underlying agreement was breached, or that the Guarantee was conditioned on the RTC's performance. The Olsens argue here that the district court's use of federal law was precluded by the recent decision in O'Melveny & Meyers v. FDIC, --- U.S. ----, 114 S.Ct. 2048 (1994) (state common law rather than federal common law governed the imputation of corporate officer's knowledge to corporation since there is no federal general common law). Since we find the district court's use of federal statutory law was proper, we find no conflict with O'Melveny. Further, assuming for the purpose of reviewing the district court's grant of summary judgment that the RTC's failure to provide financing was a breach of the commitment, it does not follow that the Guarantee was without consideration.
 
 
 4
 In O'Melveny, the Court rejected the notion that a general federal common law was to be applied to cases involving the FDIC. Specifically, where Congress did not provide a specific rule of decision in the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), 12 U.S.C. § 1823, the Court determined that the FDIC was subject to the same state rules of decision that apply to any other party and discounted the possibility that some other federal rule of decision should be judicially created. O'Melveny & Meyers v. FDIC, --- U.S. ----, 114 S.Ct. 2054. However, the Court distinguished situations where explicit federal statutory provisions applied to the issue. Id.
 
 
 5
 The distinction obvious in the case sub judice is that the district court was applying one of the statutorily provided rules of decision found in FIRREA. 12 U.S.C. § 1823(e) provides that no agreement which tends to diminish or defeat the interest of the RTC in any asset shall be valid, unless the agreement is in writing.[6] The Olsens had argued before the district court that all of the parties to the Western-Neslo transaction had an unwritten understanding that Western's performance under the Loan Commitment was an essential element of the consideration of the Guarantee. The district court rejected this argument, finding
 
 
 6
 ... no express language in the Guarantee sets forth this understanding or makes the guarantor's performance conditioned upon full performance by Western Savings under the Loan commitment agreement.... [U]nder the express language of the Guarantee the defendants are precluded from asserting a defense that the underlying agreement between Western and Neslo was breached by the RTC; that issues of fact exist regarding those claims; and from arguing that payment under the Guarantee is conditioned on the RTC's performance under the Loan Commitment Agreement.
 
 
 7
 That the district court was applying the mandates of § 1823(e), and not some "court-made rule to supplement federal statutory regulation", O'Melveny, --- U.S. ----, 114 S.Ct. at 2054, we think is beyond question. The position advanced by the Olsens in defense of their obligations on the Guarantee was that there was some "understanding", not contained in the written documents, that the Guarantee was conditioned on the RTC's approval of the non-conforming loans. Section 1823(e) specifically invalidates such a defense.
 
 
 8
 The Olsens also argue that the district court erred in its application of § 1823(e) because the understandings upon which they rely were in fact contained in the failed thrift's records. Specifically they aver that the RTC breached its obligation, as successor to Western, to perform the Loan Commitment, and thus there was a failure of consideration to support the Guarantee. This argument is flawed in several respects. First, the Olsens repeatedly fail to distinguish the RTC's contractual obligations vis-a-vis Neslo, from those owed to them. It is undisputed that Neslo is a separate legal entity, which may or may not have had an administrative claim against the RTC. The only contractual relationship between the RTC and the Olsens was the Guarantee, in which the Olsens specifically waived any defense owned by Neslo. The Guarantee is absolute on its face and does not condition the Olsen's obligation on any obligation of Western or the RTC to provide financing.
 
 
 9
 We also need not dwell long on the Olsens' argument that there was a failure of consideration for the Guarantee. The document makes clear that
 
 
 10
 Guarantor is providing this Guarantee at the instance and request of Borrower to induce Lender to extend or continue financial accommodations to Borrower.
 
 
 11
 Under Arizona law, consideration is a benefit to the promisor or a loss or detriment to the promisee. Phil Bramsen Distributor, Inc. v. Mastroni, 726 P.2d 610, 615 (Ariz.App.1986) (promise by guarantor to guarantee lease payments to lessors in return for which lessors permitted lessee to transfer interest in lease to guarantor was plainly to the benefit of guarantor and constituted adequate consideration). The extension of credit to Neslo, made contemporaneously with the execution of the Guarantee, was adequate consideration for both. Restatement (Second) of Contracts § 88 cmt. a (a guaranty is commonly supported by the consideration which supports the obligation guaranteed.) See also Restatement of Security § 86 (Where the surety offers to guarantee an extension of credit to the principal and the credit is extended as the sole consideration for the surety's promise, the contract is complete upon the extension of credit ...).
 
 
 12
 The Olsens also take issue with the district court's calculation of damages. Under the terms of the Guarantee, the Olsens' liability for payment of principal and interest was limited to an amount equal to the aggregate of all sums of interest added to the unpaid principal balance of the Note, pursuant to the terms of the Note. The Olsens argue the court misconstrued the language of the Note in making its interest determination.
 
 
 13
 In determining the meaning of the Note, we must look to Arizona state substantive law governing contracts. Whether the terms of an agreement are ambiguous is a question of law. Sun-Air Estates, Unit 1 v. Manzari, 137 Ariz. 130, 669 P.2d 108 (Ariz.App.1983). Contract language is ambiguous only if it can reasonably be given more than one meaning. McCutchin v. SCA Services, 147 Ariz. 234, 236, 709 P.2d 591, 593 (Ariz.App.1985). The mere fact that parties disagree as to the meaning of language contained in the agreement is not sufficient to create an ambiguity. United Cal. Bank v. Prudential Ins. Co., 140 Ariz. 238, 258, 681 P.2d 390, 410 (Ariz.App.1983).
 
 
 14
 The Note provided that interest would accrue at the rate of ten percent per annum, the so-called "accrual rate". However, for the first two years of the loan, interest would be paid at a lower "pay rate", with the difference between the "amount of interest accruing at the Accrual Rate and the amount of interest actually paid at the Pay Rate" added to unpaid principal. The Olsens aver that the language is susceptible to two interpretations and is hence ambiguous. On the one hand, they contend the language can be interpreted to mean they guaranteed all unpaid interest, so long as it was added to unpaid principal. On the other hand, they aver the language can be read more limitedly to mean they guaranteed only unpaid interest which fell between the Accrual Rate and the Pay Rate. The RTC responds that the language is unambiguous; that the district court interpreted the Note according to its express term that the amount of interest added to principal was the amount not actually paid at the pay rate by Neslo.
 
 
 15
 We agree with the RTC that the contract is unambiguous. The alternate construction and resulting ambiguity claimed by the Olsens arises from the inclusion in their argument of a word that is not in the document. They aver the clause is ambiguous because it can be limited to only interest between the Pay Rate and the Accrual Rate. However, the word "between" is not found in the language of the Note. The plain language that is in the document obligated the Olsens to guarantee payment of the difference between the amount accrued and the amount actually paid at the pay rate. As it is undisputed that Neslo did not actually pay all of the interest due at the Pay Rate, the district court correctly determined that the Olsens were obligated for its payment.
 
 
 16
 We also reject the Olsen's claim that the RTC was not entitled to recover property taxes and Homeowners Association fees from them under the terms of the Guarantee. They contend that their liability was extinguished by the RTC's agreement to have the taxes and assessments paid from the proceeds of the bankruptcy court sale of the collateral. This contention is refuted by the plain language of the Guarantee, granting the RTC sole discretion in the allocation of proceeds from a judicial sale. In the Guarantee the Olsens also agreed to waive any right they might have to benefit from or participate in the proceeds. Guarantee Agreement at pp 4-5. By proposing to the Bankruptcy Court that its order direct the payment of delinquent taxes out of the proceeds of the sale, the RTC was simply exercising its rights as successor beneficiary under the Deed of Trust to advance the funds to pay the delinquencies. It did not relieve the Olsens of their obligation to guarantee payments not made by Neslo.
 
 
 17
 Lastly, we review the district court's dismissal of the Olsens' counterclaim for failure to exhaust administrative remedies. The counterclaim alleged that the RTC's breach of contract extinguished the Olsen's and Neslo's obligations under the Sale Agreement, Note, Deed of Trust and Guarantee. The only administrative proof of claim submitted to the RTC was in the name of Wallace Olsen as trustee of Neslo Realty Trust. The district court found this proof of claim insufficient to satisfy the exhaustion requirement because Neslo is not a party to the instant action and the Olsens never joined in the administrative proof of claim filed by Neslo. In addition to arguing that the district court's dismissal order was error, the Olsens also contend the district court erred in denying their motion, pursuant to Fed.R.Civ.P. 17(a), to permit Wallace Olsen to proceed on the counterclaim in his capacity as trustee. We find no error in either the original dismissal of the counterclaim or the denial of the Rule 17 motion.
 
 
 18
 12 U.S.C. § 1821(d)(13)(D) provides that no court shall have jurisdiction over
 
 
 19
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC or RTC] has been appointed receiver, including assets which the [FDIC or RTC] may acquire from itself as receiver; or
 
 
 20
 (ii) any claim relating to any act or omission of such institution or the [FDIC or RTC] as receiver.
 
 
 21
 12 U.S.C. § 1821(d)(13)(D). We have previously held that this statute divests the courts of subject matter jurisdiction over such claims until the administrative claims process has been completed. Intercontinental Travel Marketing v. FDIC, 45 F.3d 1278, 1282 (9th Cir.1994); Henderson v. Bank of New England, 986 F.2d 319, 321 (9th Cir.) cert. denied, 114 S.Ct. 559 (1993). Further, the claims process applies equally to counterclaims seeking damages from the RTC as receiver of a failed thrift. RTC v. Midwest Federal Savings Bank of Minot, 36 F.3d 785, 791 (9th Cir.1993). As it is undisputed that the Olsens never filed an administrative proof of claim, the district court's dismissal of their counterclaim was not error.
 
 
 22
 We also find no merit to the Olsens' argument that the district court should have permitted the substitution of Wallace Olsen as trustee for Neslo. They assert that Rule 17 mandates that a court allow the real party in interest to step into an action mistakenly brought in the name of another so as not to defeat substantive rights. The fallacy of this argument is two fold. First, Neslo was not the real party in interest on the counterclaim, which sought to resolve only the Olsens' rights against the RTC. Second, to the extent the Olsens argue that Neslo was the real party in interest, it was not a proper party to assert a counterclaim. It is axiomatic that a counterclaim can only be brought by a party already in the lawsuit. Since the RTC's complaint against Olsen was in his individual capacity and not in his separate capacity as Neslo's trustee, he could not state as a counterclaim in this lawsuit a cause of action belonging to Neslo.
 
 
 23
 For the reasons stated, the orders of the district court are AFFIRMED.
 
 
 
 [1]
 Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [2]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [3]
 Subsequent to the filing of the complaint, the Federal Deposit Insurance Corporation was substituted in place of the RTC as party plaintiff
 
 
 [4]
 The Olsens later filed a motion for reconsideration, which was denied by Order of November 23, 1992
 
 
 [5]
 We review a grant of summary judgment de novo and evaluate the evidence most favorably to the nonmoving party to determine whether any genuine issues of material fact remain and whether the district court correctly applied the relevant substantive law. Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421 (9th Cir.1995). The district court's dismissal of the Olsens' counterclaim is likewise reviewable de novo. Pereira v. United States Postal Service, 942 F.2d 577, 578 (9th Cir.1991)
 
 
 [6]
 Congress further provided in FIRREA that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the [RTC]". 12 U.S.C. § 1821(d)(9)(A)